J. A25031/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

GLENN DISTRIBUTORS CORP.,        :     IN THE SUPERIOR COURT OF
                                          :           PENNSYLVANIA
                      Appellant      :
                                            :
                        v.             :
                                            :
RECKITT BENCKISER, LLC           :
                                          :
                                          :     No. 140 EDA 2015

Appeal from the Order Entered December 15, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: 121201574

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED December 22, 2015**

Plaintiff/Appellant, Glenn Distributors Corp., appeals from the order entered in the Philadelphia County Court of Common Pleas denying its motion for summary judgment and granting the motion of Defendant/Appellee, Reckitt Benckiser, LLC, for summary judgment. In this breach of contract matter, Appellant argues the trial court erred in finding the parties' course of performance modified their agreements. We affirm.

The trial court summarized the underlying facts as follows.

> [Appellant and Appellee] had a business relationship between 2000 and 2012. [Appellant] purchased closeout goods from [Appellee], a distributor of various retail products. This is the process by which the goods were purchased: [Appellee] would send an email to [Appellant]

---

[*] Former Justice specially assigned to the Superior Court.

(and frequently to other would-be purchasers at the same time) notifying them of the availability of closeout products. [Appellant] would respond with a bid, including price and quantity. [Appellee] would respond notifying [Appellant] that it won the bid, sometimes noting that the quantity available had changed. [Appellant] would then send a purchase order. [Appellee] would then send [Appellant] an invoice or invoices (depending on whether the goods were to be sent in different shipments), [Appellant] would pay the amounts listed in the invoices, and [Appellee] would ship the goods. The quantities listed on the invoices often did not match the quantities in the purchase orders. In dispute in the instant case are forty-six transactions between 2008 and 2012[.]

Trial Ct. Op., 4/27/15, at 1-2.

On December 12, 2012, Appellant commenced the instant breach of contract suit against Appellee. Appellant averred each of the purchase orders were express and binding contracts, Appellee failed to provide all the quantity of items set forth in them, and these "[s]hortages . . . cost" Appellant more than $2 million in profits.[1] Appellant's Second Am. Compl., 3/6/13, at ¶¶ 17, 18, 24. Appellant "did not allege that it paid for product that it did not receive." Trial Ct. Op., 4/27/15, at 2.

On July 11, 2014, both parties filed motions for summary judgment. The court heard oral arguments on December 1, 2014, and on December 12th, entered the instant order granting Appellee's motion for summary judgment and denying Appellant's motion. The trial court first found the

---

[1] Specifically, Appellant claimed $2,086,749.06 in lost profits. Appellant's Second Am. Compl. at ¶ 24.

purchase orders were contracts.[2]  However, it found these "contracts were clearly modified by the parties' course of dealing and course of performance."  Trial Ct. Op., 12/11/14, at 3.  It reasoned:

> It is undisputed that over the parties' multi-year business relationship, [Appellee] would sometimes remove some products from the list of products offered to [Appellant], after [Appellant] submitted purchase orders but before the products were shipped.
>
> In the transactions at issue, many of the emails between [Appellant's] representative and [Appellee's] representative show that [Appellant] never raised an objection to receiving less product . . . than were listed on the purchase orders.  It did not respond with demands for fulfillment, merely with questions, acceptance, or mild expressions of disappointment.   [Appellant] would sometimes offer to buy the same product in future bids, indicating that it did not believe it was owed the remainder listed in the purchase orders.
>
> It is clear that this was the parties' course of performance, in which quantities may be pulled without warning to sell at retail.  If [Appellant] were going to change the course of performance, it would have needed to give reasonable notice to [Appellee], which it did not do.  [Appellant's] behavior constituted a modification of the agreements, and therefore it could not later maintain an action for breach of contract against [Appellee] based on modifications that it agreed to.

*Id.* at 3-4.

---

[2] The trial found the purchase orders memorialized two types of agreements as follows.  In some cases, Appellee accepted Appellant's "bid on a certain quantity at a certain price," and "a contract was formed with a definite price and quantity term, memorialized in the purchase order."  Trial Ct. Op., 4/27/15, at 2-3.  In other cases, Appellant bid and Appellee "responded by changing the quantity term."  *Id.* at 3.  These responses were counteroffers, and Appellant's "purchase order constituted an acceptance."  *Id.*

Appellant filed a motion for reconsideration and then this timely appeal. Subsequently, the trial court denied the motion for reconsideration.

For ease of disposition, we first set forth the standard of review and general principles concerning summary judgment and the Uniform Commercial Code ("UCC"). This Court has stated:

> Summary judgment properly is granted after the close of the relevant pleadings "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report" and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035.2(1). The standard of our review of an order granting or denying a motion for summary judgment pursuant to Rule 1035.2 is well established. In reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. We will reverse only if there has been an error of law or a clear abuse of discretion.

*Morningstar v. Hallett*, 858 A.2d 125, 128-29 (Pa. Super. 2004) (some citations omitted). A contract for the sale of goods is governed by Article 2 of the UCC, which has been adopted in Pennsylvania. *Allegheny Energy Supply Co., LLC v. Wolf Run Mining Co.*, 53 A.3d 53, 62 (Pa. Super. 2012) (citing 13 Pa.C.S. § 2101 *et seq.*), *appeal denied*, 69 A.3d 599 (Pa. 2013).

At this juncture, we consider whether the case *sub judice* implicates a course of dealing or course of performance. Section 1303 of the UCC defines these terms as follows:

> **(a) Course of performance.—**A "course of performance" is a sequence of conduct between the parties

to a particular transaction that exists if:

> (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and

> (2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

> **(b) Course of dealing.—** A "course of dealing" is a sequence of conduct concerning **previous transactions** between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

13 Pa.C.S. § 1303(a)-(b) (emphasis added). The comment to Section 1303 states in pertinent part: "'Course of dealing' . . . is restricted, literally, to a sequence of conduct between the parties previous to the agreement. A sequence of conduct after or under the agreement, however, is a 'course of performance.'"[3] 13 Pa.C.S. § 1303, cmt. 2.

The trial court issued nearly identical opinions, one on December 12, 2014, contemporaneously with the order granting summary judgment in favor of Appellee, and a Pa.R.A.P. 1925(a) opinion on April 27, 2015. The December 2014 opinion stated, "[T]he contracts were clearly modified by the parties' **course of dealing and course of performance**" and

---

[3] **See also J.W.S. Delavau v. E. Am. Transp. & Warehousing**, 810 A.2d 672, 684 (Pa. Super. 2002) ("'Course of dealing' 'may supplement or qualify terms of an agreement,' 13 Pa.C.S.A. § 1205(c), whereas 'course of performance' may be used only to interpret a contract.").

concluded, "It is clear that this was the parties' **course of dealing**," and "If [Appellant] were going to change the **course of dealing**, it would have needed to give reasonable notice to [Appellee], which it did not do." Trial Ct. Op., 12/11/14, at 3, 4 (emphases added). The corresponding statements in the April 2015 opinion, however, differed: "[T]he contracts were clearly modified by the parties' **course of performance**," "It is clear that this was the parties' **course of performance**," and "If [Appellant] were going to change the **course of performance**, it would have needed to give reasonable notice to [Appellee], which it did not do." Trial Ct. Op., 4/27/15, at 3, 4 (emphases added). Neither opinion addressed the distinction between course of dealing and course of performance, and the latter opinion did not discuss why "course of performance" was substituted for "course of dealing."

In its brief, Appellant avers that a course of dealing is "inapt in this case," as that term pertains to conduct prior to the parties' transaction. Appellant's Brief at 30. We agree, as the court's analysis focused on the parties' conduct **after** each purchase order. Thus, we proceed on Appellant's argument that the court erred in finding a course of **performance** that modified the parties' purchase orders. **See** 13 Pa.C.S. § 1303(a)(1)-(2).

The definition of "course of performance" under Section 1303(b) is set forth above. Section 1303(f) provides:

> **(f) Waiver or modification.–**Subject to section 2209 (relating to modification, rescission and waiver), a course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance.

13 Pa.C.S. § 1303(f). Section 2209, in turn states in pertinent part:

> **(b) Writing excluding modification or rescission.—**A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.
>
> **(c) Compliance of modified contract with statute of frauds.—**The requirements of section 2201 (relating to formal requirements; statute of frauds) must be satisfied if the contract as modified is within its provisions.
>
> **(d) Ineffective modification or rescission as waiver.—**Although an attempt at modification or rescission does not satisfy the requirements of subsection (b) or (c) it can operate as a waiver.

*See* 13 Pa.C.S. § 2209(b)-(d).

Sections 2209(b) through (d) are identical—with exception in the numbering of the subsections—to Sections 2209(2) through (4) of the UCC. The official comments to UCC's Section 2209 explain in pertinent part:

> 3. Subsections (2) and (3) are intended to protect against false allegations of oral modifications." . . .
>
> The Statute of Frauds provisions of [the UCC] are expressly applied to modifications by subsection (3).
>
> \* \* \*
>
> 4. Subsection (4) is intended, despite the provisions of subsections (2) and (3), to prevent contractual provisions

> excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct.

Unif. Commercial Code § 2-209, cmts. 3-4.

On appeal, Appellant agrees with the trial court's finding that the purchase orders were contracts. **See** Appellant's Brief at 7. However, it avers the trial court erred in: (1) finding the parties' course of performance modified their contracts and (2) granting summary judgment in favor of Appellee.[4] We address its arguments *seriatim*.

First, Appellant avers "[m]odification subject to 2209(d) must always begin with a legally insufficient (under 2209(b)/(c)) 'attempt at modification' to operate as a waiver." Appellant's Brief at 22 (citing 13 Pa.C.S. § 2209(b)-(d); **Inwood Knitting Mill Co. v. Budge Mfg. Co.**, 29 Pa. D. & C.2d 462, 463 (Pa. Com. Pl. 1962)).[5] It asserts that in the instant case, however, "[t]here were no attempts at modification" and "no record evidence of [Appellee] affirmatively **requesting** a change to the terms of the parties'

---

[4] Although Appellant's statement of questions involved presents three issues, the argument section sets forth two issues, the first of which is divided into five sub-issues. **See** Pa.R.A.P. 2119(a) (requiring argument section to "be divided into as many parts as there are questions to be argued"). Nevertheless, all of Appellant's issues overlap and thus we consider them together.

[5] "[W]hile appellate courts are not bound by the decisions of the Courts of Common Pleas, they may be considered for their persuasive authority." **Sysco Corp. v. FW Chocolatier, LLC**, 85 A.3d 515, 520 n.2 (Pa. Super. 2014).

contracts before shipping [the] products," and instead, "the typical pattern was for [Appellee] to simply ship nonconforming products to [Appellant] without ever informing [Appellant] that no further shipments of contracted for products would be made."[6]   Appellant's Brief at 22-23.   Appellant's second and third arguments are that in the alternative, (1) "[a]ny purported modification of the parties' contracts, or waiver of [Appellee's] obligations, fail the good faith test imposed by the UCC;" and (2) there is no evidence that Appellee "reasonably relied on" any modification.  *Id.* at 26 (citing 13 Pa.C.S. § 1201(19), 29).  We find no relief is due.

First, we disagree with Appellant that Subsection 2209(d) and findings of modification or waiver are applicable in this case.  While the trial court's opinion quoted Subsection 2209(d), it made no further mention of it, or waiver, in its analysis.  Instead, its holding was based solely on a finding that Appellant's "behavior constituted a modification of the [parties'] agreements."  *Id.* at 3-4.   Additionally, the UCC comment states that Subsection 2209(4) "is intended . . . to prevent contractual provisions excluding modification—except by a signed writing—from limiting . . . the parties' actual later conduct."  Unif. Commercial Code § 2-209, cmt. 4

---

[6] Appellant further argues, "At the very least, the issue should be sent to a jury."  Appellant's Brief at 24.  This contention, along with other arguments that other factual issues should be heard by a jury, ignore or overlook the fact that Appellant itself had filed a motion for summary judgment.  *See Morningstar*, 858 A.2d at 128 (stating summary judgment is proper when there is no genuine issue of any material fact).

(dashes added). Thus, Section 2209(d) is not applicable in this case for the additional reason that the purchase orders did not include any term excluding modification. We hold Appellant's reliance on Section 2209 is misplaced.

We next consider Appellant's argument concerning the parties' conduct following the issuance of a purchase order. Appellant alleges the following. When it "inquired about undelivered products," Appellee "misled [Appellant] into believing [it] was attempting to rectify [Appellant's] grievances."[7] Appellant's Brief at 26-27. When Appellant sent "a more formal demand[, Appellant] received a vague response [and] did not receive a clear statement [from Appellee] repudiating its obligation to ship the purchase order quantities." *Id.* at 27. Appellee "act[ed] this way" because it "knew" "it had power in [this] relationship [and] that [Appellant] needed [Appellee] more than [Appellee] needed [Appellant]." *Id.* at 27. Furthermore, both parties "knew" that if Appellant were "forceful in its demands" or accused Appellee of "breach[ing] its contract," Appellee "would have ended the parties' business relationship immediately." *Id.* at 28; *see also id.* at 25 ("Davids must tread carefully around Goliaths.").

---

[7] Appellant asserts, "There were very rare occasions where, in response to [Appellant's] inquiry, [Appellee] admitted . . . that contracted for products would not be shipped[. O]n those rare instances, the parties expressly modified the contract by [Appellee] submitting a 'new' purchase order[.]" Appellant's Brief at 23.

- 10 -

A careful review of Appellant's argument reveals it does not dispute the court's finding that when Appellee shipped a quantity of goods different from what was indicated in the purchase orders, Appellant failed to "respond with demands for fulfillment, [and instead] merely with questions, acceptance, or mild expressions of disappointment." **See** Trial Ct. Op. at 3-4. Indeed, Appellant's explanations—for why it did not act "forceful in its demands" and assert Appellee "breached its contract"—corroborates the court's finding. **See** Appellant's Brief at 28.

Before considering Appellant's final claim, we reiterate the court's summary of the sequence of parties' transactions: after Appellant transmitted a purchase order, Appellee sent Appellant an invoice with quantities that "often did not match the quantities in the purchase orders," Appellant paid "the amounts listed in the invoices," and Appellee shipped the goods. Trial Ct. Op., 4/27/15,a at 1-2.

On appeal, Appellant asserts "[t]he trial court misconstrued the facts in the record" in finding it "waited for the invoices and paid [Appellee] in response to those." Appellant's Brief at 31-32. Appellant maintains that instead, it "did not pay based on the invoices in every instance." **Id.** at 32. It claims Appellee admitted Appellant paid "based on what had been communicated" and Appellant "paid in advance of [Appellee] shipp[ing] products." **Id.** Furthermore, some invoices had an "invoice date" which fell after the "shipped date." **Id.** We find no relief is due.

Appellant does not aver that it refused to pay for any order or that it ever declared any purchase order or invoice void or breached. Instead, on appeal, Appellant merely states that in some orders, it did not pay according to the invoice. We hold this argument does not overcome the court's finding that Appellant failed to challenge Appellee's shipments of goods and failed to demand Appellee to correct the quantity of goods.

For the foregoing reasons, we do not disturb the court's finding that Appellant's conduct, in forty-six transactions over a period of four years, was a course of performance that modified the parties' contracts. The parties' "transaction[s] involve[d] repeated occasions for performance by" Appellee, and Appellant, "with knowledge of the nature of the performance and opportunity for objection . . . , accept[ed] the performance or acquiesce[d] in it without objection." *See* 13 Pa.C.S. § 1303(a)(1)-(2). We affirm the order of the trial court granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment.

Order affirmed.

Judge Mundy joins the memorandum.

Judge Donohue files a concurring memorandum in which Judge Mundy joins.

J.A25031/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2015